UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CITY NATIONAL ROCHDALE FIXED INCOME OPPORTUNITIES (IRELAND) LIMITED,** | § § § § § § § § § § § § § § § | |
| Plaintiff, | | Civil Action No. 3:17-cv-2067 |
| v. | | JURY TRIAL DEMANDED |
| **AMERICAN GENERAL LIFE INSURANCE COMPANY,** | | |
| Defendant. | | |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT,
BREACH OF CONTRACT, MONEY HAD AND RECEIVED**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff City National Rochdale Fixed Income Opportunities (Ireland) Limited ("CNR Ireland" or "Plaintiff") and files its Original Complaint against defendant American General Life Insurance Company ("AGL" or "Defendant") for (1) a judicial determination of the premiums owed under a life insurance policy captioned Flexible Premium Adjustable Life Insurance Policy No. U10025508L issued by AGL on or about April 28, 2008, insuring the life of Adele Mizrahi (the "Mizrahi Policy" or "Policy"); (2) breach of express and implied duties under the Policy; and (3) money had and received. In support of this Original Complaint, Plaintiff would show as follows:

1

## THE PARTIES

1. Plaintiff CNR Ireland is a private limited company organized under the laws of Ireland with its principal place of business in Dublin, Ireland.

2. Defendant AGL is a Texas corporation with its principal place of business in Houston, Texas.  Plaintiff is informed and believes, and based thereon alleges, that some or all of the underwriting of and premium calculations for the Mizrahi Policy were performed by underwriters and other insurance professionals at or affiliated with American International Group ("AIG"), an insurance conglomerate of which AGL is a wholly-owned subsidiary. Plaintiff is informed and believes, and based thereon alleges, that the real party in interest in this litigation is AIG, which sells life insurance products under various names, of which AGL is one. Plaintiff is informed and believes, and based thereon alleges, that AGL contracts with one or more AIG entities to perform underwriting of and premium calculations for life insurance products like the one AGL sold to insure the life of Adele Mizrahi.  In view of AIG's ownership of AGL and its control over underwriting of and premium calculations for such products, and the fact that the life insurance professionals who underwrote and calculated premiums for the Mizrahi Policy were employed by or affiliated with AIG, the defendant in this action is referred to in this Complaint as AIG wherever appropriate.

## JURISDICTION

3. Jurisdiction is proper in this matter based on diversity of citizenship pursuant to 28 U.S.C. section 1332, subd. (a)(2).

4. Plaintiff's claim for a declaratory judgment is authorized by 28 U.S.C. sections 2201 and 2202, by Rule 57 of the Federal Rules of Civil Procedure, and by the general and equitable powers of this Court.

**VENUE**

5. Venue is proper in the Northern District of Texas, Dallas Division, pursuant 28 U.S.C. section 1391, subds. (b)(1), (c)(2) and (d) because AGL's contacts in this judicial district are sufficient to subject it to personal jurisdiction therein.

**FACTUAL ALLEGATIONS**

1. In or about August 2008, The Mizrahi Policy was purchased by the Adele Mizrahi 2008 Family Trust (the "Trust"). The Trust was the sole owner and beneficiary of the Mizrahi Policy.

2. In or about March 2011, the Rochdale Alternative Total Return Fund, LLC (the "Fund") purchased the Mizrahi Policy from the Trust and, thereby, the Fund became the sole owner and beneficiary of the Mizrahi Policy (the "Transaction").

3. The Transaction had the effect of transferring to the Fund all of the Trust's rights and duties under the Mizrahi Policy. These rights and duties included the Trust's obligation to pay premiums in order to keep the Policy in effect, and its right to recover from AGL the death benefit and any residual value payable in the event that Mrs. Mizrahi died while the Policy was in effect.

4. After the Transaction, the Fund made premium payments to AGL on a quarterly basis to keep the Policy in effect.

5. After the Transaction, the Fund asked AIG at various times how premiums would be calculated by the carrier. In response, from 2011 to 2013, AIG sent the Fund documents captioned "In-Force Life Insurance" illustrations estimating the amount of premiums the Fund should expect to pay to keep the Mizrahi Policy in force. Although the application for the Mizrahi Policy requested a "ContinUL" life insurance product with a Continuation Guarantee, the 2011-2013 Illustrations were based upon a different product called an "Elite Universal Life

2003" life insurance policy ("Elite") without a Continuation Guarantee.

6. The Continuation Guarantee limited AIG's right to increase the amount of the quarterly premiums the Fund had to pay to keep the Mizrahi Policy in force. The Continuation Guarantee allowed the Fund to keep the Mizrahi Policy in force until its Maturity Date (April 28, 2047) even if the cash value in the Policy fell below the cost of the term insurance plus AIG's monthly administrative fee. The Continuation Guarantee applied so long as the Fund maintained a positive balance in the Continuation Guarantee Account ("CGA")[1] which fluctuated in value based on the amount and frequency of the Fund's premium payments. All of these premium payments were calculated solely by AIG, by some method it has refused to disclose.

7. The amount of the CGA was to be calculated, in part, based on two tables attached to the policy, captioned Table A and Table B. Each of these tables expressed a set of insurance rates on the basis of which premiums would be calculated. Table A rates were much lower than Table B rates. Whether Table A or Table B rates applied was to be determined in connection with the calculation of the CGA balance.

8. CNR Ireland is informed and believes that, among other errors, AIG has incorrectly calculated premiums on the assumptions that (a) the Mizrahi Policy was issued on an Elite-like form without a Continuation Guarantee, rather than on the ContinUL form with a Continuation Guarantee; and (b) Table B rates, rather than Table A rates, applied.

9. On or about June 2014, the Fund transferred the Mizrahi Policy to CNR Ireland and, thereby, CNR Ireland became the sole owner and beneficiary (the "Transfer").

10. The Transfer had the effect of transferring to CNR Ireland all of the Fund's rights and duties under the Mizrahi Policy. These rights and duties included the Fund's obligation to pay premiums in order to keep the Policy in effect, and its right to recover from AGL the death

benefit and any residual value payable in the event that Mrs. Mizrahi died while the Policy was in effect.

11. After the Transfer, CNR Ireland made premium payments to AGL on a quarterly basis to keep the Policy in effect.

12. After the Transfer, CNR Ireland asked AIG at various times how premiums would be calculated by the carrier. In response, from 2014 to present, AIG sent CNR Ireland documents captioned "In-Force Life Insurance" illustrations estimating the amount of premiums CNR should expect to pay to keep the Mizrahi Policy in force.

13. CNR Ireland is informed and believes that, among other errors, AIG refused to disclose that it had incorrectly calculated premiums based on the faulty assumptions that (a) the Mizrahi Policy was an Elite-like form without a Continuation Guarantee, rather than on the ContinUL form with a Continuation Guarantee; and (b) Table B rates, rather than Table A rates, applied and, thereby, misled CNR Ireland about the amount of premiums owed under the Mizrahi Policy.

14. On or about January 2017, AIG prepared a "Continuation Guarantee Account Transaction Detail" recalculating the CGA balance for the Mizrahi Policy during the period of December 28, 2010 to April 11, 2013 (the "2010-2013 CGA Report") to correct these inaccurate assumptions. The 2010-2013 CGA Report recalculated and corrected past premiums already charged to and paid by the Fund for this period by reclassifying the Mizrahi policy as a ContinUL-type policy with a Continuation Guarantee, and by applying lower Table A rates. CNR Ireland is informed and believes that the 2010-2013 CGA Report correctly calculates the CGA balance for the Mizrahi Policy for the 2010-2013 period. AIG has been asked to provide a

---

[1] Specifically, the Continuation Guarantee will remain in effect as long as the value of the Continuation Guarantee is greater than or equal to zero.

complete CGA Report, from inception of the Mizrahi Policy (April 28, 2008) to date, showing how it calculated premiums. AIG has declined.

15. Based on AIG's admission that it miscalculated premiums from 2010 to 2013, CNR Ireland is informed and believes, and based thereon alleges, that some or all of the premiums charged to and paid by CNR Ireland were incorrect. Nevertheless, to prevent the Mizrahi Policy from lapsing, CNR Ireland has paid all of the premiums demanded by AIG.

16. CNR Ireland and its predecessors in interest have been unable to calculate the correct premiums for the Mizrahi Policy because AIG has refused to disclose the method by which it calculated the premiums AIG demanded. When CNR Ireland and its predecessors in interest have asked for this information, AIG has either (a) ignored the requests; (b) responded that it could produce only "illustrations" of how premiums might have been calculated; or (c) responded that calculating the actual premiums due the Policy in accordance with this method would take too much work. For these reasons, it has been impossible for CNR Ireland to determine how AIG calculated the actual premiums charged for the Policy and, thereby, determine whether and to what extent it was overcharged. Therefore, CNR Ireland is unable to determine the correct amount of premiums owed each quarter to keep the Policy in force.

17. The only reason CNR Ireland has been unable to determine the correct premiums is because AIG has unjustifiably and inequitably withheld this information from CNR Ireland after realizing that it misclassified the Policy. Consequently, all statutory and other periods of limitations applicable to the claims made in this action have been tolled during the entire period AIG prevented CNR Ireland from determining the correct premiums.

### FIRST CLAIM FOR RELIEF
**(Declaratory Judgment)**

18. CNR Ireland incorporates by reference all allegations made in the preceding

paragraphs as if they were set forth in full herein.

19. Declaratory relief is available for cases of actual controversy relating to the legal rights and duties of the respective parties under a written contract. The following actual, substantial, and justiciable controversy has arisen and presently exists between CNR Ireland and AIG:

   a. AIG has charged premiums for the Mizrahi Policy based on calculations that, for the most part, it will not explain. In the only explanation of its methodology for calculating premiums that AIG has provided – for the period of 2010 to 2013 – AIG corrected its assumptions and retroactively recalculated premiums. AIG has declined to explain its method for calculating premiums for the periods extending before and after the 2010 to 2013 period, thereby preventing CNR Ireland from determining the correct amount of premiums due. CNR Ireland is informed and believes that some or all of AIG's premium calculations for the periods outside of the 2010 to 2013 period are also based on an incorrect method.

   b. Each quarter since the Transaction, AIG has demanded a premium that it contended was the correct amount necessary to keep the Mizrahi Policy in effect through the next quarter. CNR Ireland paid each of these premiums. CNR Ireland is informed and believes that because of AIG's incorrect calculations, each quarterly premium amount billed by AIG and paid by CNR Ireland exceeded the amount necessary to keep the Policy in force for an additional quarter. As a result, premiums for the Mizrahi Policy are now paid in full for a time period far beyond the next quarter. CNR Ireland is informed and believes that because of AIG's miscalculations,

          either (i) no further premiums are due in order to keep the Policy in force until Ms. Mizrahi's death; or (ii) the premiums payable to accomplish this result are far less than what AIG has billed and will continue to bill CNR Ireland.

    c. AIG contends that it has not miscalculated premiums for the Mizrahi Policy, and that CNR Ireland has not overpaid these premiums.

20. Plaintiff seeks a judicial determination of:

    a. The correct date in the future up to which premiums for the Mizrahi Policy have been fully paid;

    b. The amount by which premiums are currently overpaid; and

    c. AIG's obligation to refund this amount to CNR Ireland, which it believes exceeds the jurisdictional minimum of this Court (whose jurisdiction over the subject matter of this case is based on diversity of the citizenship of the parties).

21. A judicial determination or declaration is necessary and appropriate at this time so that CNR Ireland and AIG may ascertain their respective rights and obligations with respect to this dispute.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**

22. CNR Ireland incorporates by reference all allegations made in the preceding paragraphs as if they were set forth in full herein.

23. At all relevant times, the Policy and applicable law imposed upon AIG a duty to properly calculate premiums owed under the Policy. AIG breached this duty by misclassifying the Policy as lacking a Continuation Guarantee and, therefore, miscalculating the amount of

premium owed.

24. At all relevant times, the Policy and applicable law imposed upon AIG a duty to (a) notify CNR Ireland when the requirements of the Continuation Guarantee provisions have not been met, (b) notify CNR Ireland of any modification of the Policy to conform to applicable law; and (c) disclose how it calculated actual premiums charged to CNR Ireland.  AIG breached these duties by misclassifying the Policy as lacking a Continuation Guarantee, misrepresenting the amount of premiums owed under the Policy and refusing to disclose how it calculated actual premiums under the Policy after recognizing that it misclassified the Policy.

25. CNR Ireland has performed all conditions to AIG's performance under the Policy and applicable law, except those which AIG has waived or is estopped from asserting.

26. CNR Ireland has suffered damages as a result of AIG's breach of contract in an amount to be shown at trial.

### THIRD CLAIM FOR RELIEF
### (Money Had And Received)

27. CNR Ireland incorporates by reference all allegations made in the preceding paragraphs as if they were set forth in full herein.

28. AIG calculated premiums owed by CNR Ireland under the Policy to keep it from lapsing.

29. AIG demanded that CNR Ireland pay certain premium amounts to keep the Policy from lapsing.

30. CNR Ireland paid the premium amounts demanded by AIG in order to keep the Policy from lapsing.

31. AIG misclassified the Policy as lacking a Continuation Guarantee and, therefore, miscalculated premiums owed under the Policy.

32. AIG took undue advantage of its error and CNR Ireland's inability calculate the amount of premiums owed under the Policy by requiring CNR Ireland to pay it more premium than was required to keep the Policy from lapsing

33. AGL has received premium payments that it was not entitled to in equity and good conscience.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

## ON PLAINTIFF'S FIRST CLAIM:

1. For a declaratory judgment of:
   a. The correct date in the future up to which premiums for the Mizrahi Policy have been fully paid;
   b. The amount by which premiums are currently overpaid; and
   c. AIG's obligation to refund this amount to CNR Ireland.
2. For costs of suit incurred herein; and
3. For such other and further relief as the Court may deem just and proper.

## ON PLAINTIFF'S SECOND CLAIM:

1. For a judgment that AIG must pay CNR Ireland an amount equal to the correct amount of premiums due and owing for the Mizrahi Policy from its inception to the present, net of all premiums CNR Ireland has paid AIG to date.
2. For consequential damages according to proof;
3. For prejudgment interest;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court may deem just and proper.

**ON PLAINTIFF'S THIRD CLAIM:**

1. For a judgment that AIG must pay CNR Ireland an amount equal to the correct amount of premiums due and owing for the Mizrahi Policy from its inception to the present, net of all premiums CNR Ireland has paid AIG to date.

2. For consequential damages according to proof;

3. For prejudgment interest;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

JURY TRIAL DEMANDED.

Respectfully submitted,

Dated: August 3, 2017                 By: /s/ John L. Corbett

DAVID E. WOOD*
JOSHUA ROSENBERG*
**BARNES & THORNBERG LLP**
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: 310-284-3880
Facsimile: 310-284-3894
dwood@btlaw.com
jrosenberg@btlaw.com

JOHN L. CORBETT
Texas Bar No. 24088884
**BARNES & THORNBERG LLP**
2100 McKinney Avenue, Suite 1250
Dallas, TX 75201
Telephone: 214-258-4200
Facsimile: 214-258-4199
jcorbett@btlaw.com

*Counsel for Plaintiff CITY NATIONAL ROCHDALE FIXED INCOME OPPORTUNITIES (IRELAND) LIMITED*

* Application for admission *pro hac vice* to be submitted.